UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL LEE FULTZ, <br><br> Plaintiff, <br><br> v. <br><br> T. CAMBE, et al., <br><br> Defendants. | CASE NO. 3:20-CV-259-MGG |

**OPINION AND ORDER**

Michael Lee Fultz sued twelve prison officials at the Westville Correctional Facility ("WCF") after he waited three months to receive dental care for a broken tooth. Mr. Fultz initially filed his case *pro se*, so the Court screened Mr. Fultz's complaint under 28 U.S.C. § 1915A. The Court's screening orders granted Mr. Fultz leave to proceed against WCF Grievance Specialist Troy Cambe, WCF Grievance Specialist John Harvil, and WCF Administrative Assistant David Leonard ("WCF Grievance Staff") "for nominal, compensatory, and punitive damages for taking no action to assist in obtaining necessary dental care for Mr. Fultz despite knowledge that he was suffering from serious dental pain and had not yet been evaluated by any medical staff, in violation of the Eighth Amendment . . . ."[DE 9 at 5, 9; DE 25 at 3].

Defendants moved for summary judgment on November 15, 2022. Mr. Fultz then hired an attorney, who appeared on January 30, 2023. [*See* DE 77]. With this recent appearance of counsel, the Court afforded Mr. Fultz additional time to respond to Defendants' motion. Mr. Fultz, through counsel, then filed his response in opposition to

summary judgment on March 7, 2023. The motion became ripe on March 20, 2023, when Defendants filed their reply.

The undersigned now issues the following opinion and order with jurisdiction conferred by the parties' consent and 28 U.S.C. § 636(c). [*See* DE 48]. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED** in favor of the WCF Grievance Staff and against the Plaintiff. [DE 69].

I.   **Factual Background**

The facts below are construed in the light most favorable to Mr. Fultz and are largely undisputed. For purposes of this Order, any facts not addressed are taken as undisputed in accordance with Fed. R. Civ. P. 56(e)(2).

Mr. Fultz was incarcerated at the Westville Correctional Facility ("WCF") in Westville, Indiana from 2016 through 2018. [DE 80-1 at 1, ¶1]. During the time of Mr. Fultz's incarceration, WCF had procedures in place for the nearly 3,500 inmates housed there to request healthcare-related services and to raise concerns about their conditions of confinement. As to the former, inmates could request healthcare-related services— such as sick calls, dental visits, prescription refills, and mental health visits—by completing a Request for Health Care (State Form 45913) and submitting this form to their facility's healthcare staff. [DE 80-1]. Inmates could also seek resolution of any concerns and complaints about the conditions of their confinement by submitting an Offender Grievance (State Form 45471) to their facility's grievance specialist, in accordance with the Indiana Department of Correction's grievance policies. [DE 70-3].

On April 24, 2018, Mr. Fultz fell and broke his right front tooth. [*Id.* ¶5]. He was not seen by the WCF dentist for another three months despite submitting several healthcare requests and grievance forms requesting treatment.

During this three-month timeframe, Defendants Troy Cambe, David Leonard, and John Harvil were employed at WCF. Defendants Troy Cambe and John Harvil were employed as grievance specialists. Mr. Cambe worked in this position until July 27, 2018, when he was promoted to Deputy Warden at Miami Correctional Facility. [DE 70-1 at 1]. Mr. Harvil started as a grievance specialist on July 23, 2018. During his first week as a grievance specialist, he was in training under the direction of Mr. Cambe. His first official day as a grievance specialist began on July 30th. [DE 70-6 at 1, ¶4-9]. Mr. Leonard was an administrative assistant, and, at the time of Mr. Fultz's injury, he worked as an executive assistant to the Warden at WCF. [DE 70-8 at 1, ¶2]. As recounted below, each Defendant received grievances from Mr. Fultz regarding his broken tooth and the time that had passed before he received treatment.

Mr. Fultz submitted his first healthcare request form the same day he fell, stating that he broke his tooth and "need[ed] it fixed." [*Id.* ¶6; DE 80-1 at 6]. He did not receive a response from healthcare staff for several days, however, prompting him to submit a second healthcare request form on May 1st. But shortly after submitting this second healthcare request, Mr. Fultz received a response to his initial healthcare request. The

3

unnamed healthcare staff's response[1] to his initial request stated, "I will add your name to the WCU list." [DE 80-1 at 6].

But another week passed without a dental evaluation, prompting Mr. Fultz to file an offender grievance form ("Grievance 102189") on May 8th. [DE 80-1 at 7]. In this grievance, Mr. Fultz complained that he had not yet received a response to either of his healthcare requests and that he still had not been seen by the dentist for his tooth.[2] Mr. Cambe received the grievance and forwarded it to DeAngela Lewis, WCF's Health Services Manager, on May 10th. Ms. Lewis responded to Mr. Cambe by forwarding an email she received from Dr. Pearcy, the dentist at WCF, regarding Mr. Fultz's healthcare requests. Dr. Pearcy's email provided that the Dental Office had received Mr. Fultz' initial healthcare request on May 1st and had responded to him on May 3rd. [DE 70-1 at 3]. Dr. Pearcy also stated that the Dental Office "ha[s] [Mr. Fultz] scheduled to be seen within the 6 week window. He did not mention anything other than he has a 'broken' front tooth. We have not received any other [forms]." [*Id.*]. After receiving this information, Mr. Cambe responded to Mr. Fultz's grievance by confirming that Mr. Fultz's request had been "received in the Dental Office on 5/1/18 and [he was] scheduled to be seen. Grievance Addressed." [80-1 at 8].

Based on Mr. Cambe's response, Mr. Fultz believed that he would be seen by the dentist within a week, so he did not pursue the grievance any further. [DE 80-1 at 10].

---

[1] A portion of the healthcare request form states that it is to be completed and signed by healthcare staff. Here, the form is completed and signed with only initials – "cc" of the healthcare staff. *See*, e.g., DE 80-1 at 6.

[2] Although Mr. Fultz alleged in this grievance that he never received a response to his two healthcare requests, Mr. Fultz has since clarified that he received a response to his first request on May 1st.

4

But after more time passed without an evaluation by a dentist, Mr. Fultz submitted two other healthcare requests on May 21st and June 18th. [*Id.*]. Mr. Fultz's third healthcare request from May 21st is not in the record. But in his fourth healthcare request dated June 18th, Mr. Fultz reiterates that this was now his "4th health care request" for his broken tooth and that he had "only gotten a response from the 1st request." [DE 80-1 at 9]. Mr. Fultz also stated that "[his tooth] hurts more each day, it's become severely painful." [*Id.*]. After receiving no response to either of these healthcare requests, Mr. Fultz submitted a second grievance on June 24th. In this grievance, Mr. Fultz explained that his two other healthcare requests on May 21st and June 18th were still unanswered even though these requests described his increasing pain and other symptoms. He reiterated that his broken tooth caused him persistent headaches and that the increasing pain prevented him from sleeping. [DE 80-1 at 10].

    Mr. Cambe received this second grievance on June 27th and returned it to Mr. Fultz that same day, noting that this issue had been addressed by Grievance 102189. [DE 80-1 at 11-12]. Mr. Fultz disagreed with Mr. Cambe's response, so he appealed Grievance 102189 and requested an interview. Mr. Fultz maintained that this second grievance was not duplicative of Grievance 102189, as Grievance 102189 involved the healthcare staff's failure to respond to his healthcare requests while his second one aggrieves the time it took to be evaluated. Still, Mr. Cambe returned the interview request form on June 28, 2018, stating that the appeal was outside the five-business day appeal timeframe permitted by WCF policy. [DE 80-1 at 14].

Mr. Fultz submitted another healthcare request on June 28th, reiterating his continued pain and headaches. [DE 80-1 at 15]. He explained that he had now submitted five healthcare requests but had only received a response to the first one. But, the next day, Mr. Fultz finally received a response to his fourth healthcare request. The healthcare staff responded that he was "already on the list." [DE 80-1 at 9]. WCF healthcare staff also responded to Mr. Fultz's fifth request on July 5th, reiterating that Mr. Fultz was "already on the list." [*Id.*].

Before Mr. Fultz received the healthcare staff's response to his fifth request, he filed another grievance and interview request on July 4th. In this grievance, he primarily complains of Mr. Cambe's response to his prior grievance, so he directed it to the WCF Executive Assistant—Defendant David Leonard. Mr. Fultz also explains that it had been sixty-four days since he broke his tooth, that he still had not seen the dentist, and that he was in extreme pain. [DE 80-1 at 16]. But Mr. Leonard returned the grievance on July 10th, citing two issues: first, that Mr. Fultz had not included evidence of his attempts to resolve the matter internally, and second, that the grievance was "not legible, understandable, or presented in a courteous manner, or it contains excessive legal jargon." [*Id.* at 18-19]. Even though Mr. Leonard returned the grievance for these procedural defects, he maintains that his position as the Executive Assistant gave him no authority to require the Dental Office to prioritize Mr. Fultz's appointment. [DE 70-8 at 2, ¶6].

With this grievance returned, Mr. Fultz then submitted another grievance on July 12th, this time marking it as an emergency. [*See* DE 80-1 at 20]. He reiterated that he had

6

been waiting seventy-nine days for treatment and was suffering severe pain, headaches, and sleeplessness. [*See id.*]. Defendant John Harvil, who was training to become a Grievance Specialist, received and reviewed this grievance under the direction of Mr. Cambe on July 24th. [DE 70-6 at 1, ¶¶ 4-7]. Mr. Harvil maintains that, as a trainee, he did not investigate any grievance himself, including Mr. Fultz's grievance, and he only responded to grievances as directed by Mr. Cambe. [DE 70-6 at 2, ¶7]. Accordingly, after receiving direction from Mr. Cambe, Mr. Harvil returned the grievance to Mr. Fultz, noting that his complaints were already addressed by Grievance 102189. [DE 80-1 at 21-22].

A day before this grievance was returned, Mr. Fultz filed more grievances. He reiterated that he had filed seven healthcare requests but still had not yet seen the dentist for treatment. [DE 80-1 at 23-25]. Mr. Fultz further alleged his belief that he was being denied treatment because of a pending lawsuit he had filed against WCF. [DE 80-1 at 23].

Finally, after three months, seven healthcare requests, and over five grievances or grievance attempts, Mr. Fultz was ultimately seen by the WCF dentist, Dr. Pearcy, on July 27th. Dr. Pearcy pulled the broken tooth, which resolved Mr. Fultz's pain and other symptoms. [DE 80-1 at 5].

## II. Legal Standard

Summary judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388,

391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). A genuine issue for trial exists if the nonmovant demonstrates that a rational factfinder could rule in his favor, viewing the record as a whole. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). The Court's function in evaluating a motion for summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial, "constru[ing] the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party." *Norfolk S. Ry. Co. v. Glob. Tower, LLC*, 620 F. Supp. 3d 784, 791 (N.D. Ind. 2022).

In sum, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.  Discussion

Mr. Fultz was granted leave to proceed against these three non-medical defendants on claims of deliberate indifference under the Eighth Amendment. [*See* DE 9, *as amended at* DE 25]. The Eighth Amendment compels prison officials to provide inmates with adequate healthcare, as "[i]t is well established that persons in criminal custody are entirely dependent on the state for their medical care." *Mitchell v. Kallas*, 895 F.3d 492, 496 (7th Cir. 2018) (internal citation omitted). Accordingly, prison officials violate the Eighth Amendment when they demonstrate "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate

indifference claims have an objective component and a subjective component. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018). An inmate must show both: "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (internal citation omitted).

As to the objective component, Defendants do not directly dispute that Mr. Fultz's broken tooth constituted a serious medical condition. Defendants instead contend that the "evidence demonstrates that the Defendants did not act with the required level of deliberate indifference." [DE 69 at 1]. But before turning to the parties' arguments related to the subjective component of Mr. Fultz's claims, the Court first briefly considers whether Mr. Fultz's broken tooth constitutes a serious medical condition.

### A. Serious Medical Condition

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Courts have also acknowledged that "[d]ental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). Accordingly, "dental pain accompanied by

9

various degrees of attenuated medical harm may constitute an objectively serious medical need." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (collecting cases).

The undisputed evidence shows that Mr. Fultz complained of extreme pain, sleeplessness, and headaches due to his broken tooth. *See Greeno*, 414 F.3d at 655 (observing that "there is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition"). Mr. Fultz's tooth also had to be extracted to alleviate his pain and other symptoms. Based on this, and without anything further from Defendants, the Court finds that Mr. Fultz has satisfied the objective component of his claim. *Board*, 394 F.3d at 480; *see also Ford v. Wexford Health Sources, Inc.*, No. 13-CV-43-NJR-DGW, 2015 WL 1379382, at *6 (S.D. Ill. Mar. 24, 2015) (finding that a broken tooth which caused pain, difficulties eating and sleeping, and that required removal constituted a serious medical condition).

### B. Deliberate Indifference

With the objective component satisfied, the Court now considers the subjective component of Mr. Fultz's claim. The subjective component of a deliberate indifference claim requires a showing that prison officials had a "sufficiently culpable state of mind." *Peterson v. Wexford*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official must be both (1) "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) "draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference requires more than mere negligence—it requires a conscious disregard or recklessness. *Id.* at 839. Put

another way, deliberate indifference is a high standard and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).

Defendants are administrative, non-medical prison officials. Courts have recognized that

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that a prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.

*Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Burks v. Raemish*, 555 F.3d 592, 594 (7th Cir. 2009) ("The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks . . . .").

But non-medical personnel may still "be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" where they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Non-medical personnel are considered aware of facts from which the inference could be drawn that a substantial risk of serious harm exists when they receive communications from an inmate that, "in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). As previously observed, "where non-medical prison officials receive communications that

11

are sufficient in their 'content and manner of transmission' to give those officials "notice to alert him or her to an excessive risk to inmate health or safety[,]' then there is a duty to take some action." [DE 9 at 5, quoting *Arnett*, 658 F.3d at 755].

It is undisputed that each Defendant received grievances from Mr. Fultz stating that he was suffering from extreme pain but had yet to receive dental treatment. Mr. Cambe found out about Mr. Fultz's broken tooth on May 10, 2018, when he received Mr. Fultz's first grievance. [DE 80-1 at 7]. On June 27, 2018, Mr. Cambe received Mr. Fultz's second grievance, and thus was again made aware that Mr. Fultz had not yet received treatment for the broken tooth. Mr. Cambe was again aware that Mr. Fultz's tooth remained untreated as of July 24th, when he reviewed Mr. Fultz's grievance dated July 12th. Moreover, although Mr. Fultz's grievance to Mr. Leonard primarily complained of Mr. Cambe's handling of Mr. Fultz's second grievance, it also made clear that it had "been 64 days since [Mr. Fultz's] tooth broke." [*Id.* at 16]. Finally, although Mr. Harvil was still in training for his position as a Grievance Specialist at the time he received Mr. Fultz's grievance on July 24th, the grievance Mr. Harvil reviewed plainly stated that Mr. Fultz had "been waiting for 79 days to see the dentist" for his broken tooth and that his "tooth [was] throbbing causing [him] to suffer severe pain . . . headaches and ke[pt] him up at night." [*Id.* at 20].

The actions Defendants took in response to Mr. Fultz's grievances are also undisputed. First, after Mr. Cambe received Mr. Fultz's grievance on May 8th, he contacted WCF's Health Services Manager, DeAngela Lewis, regarding the grievance and Mr. Fultz's need for dental care. Ms. Lewis confirmed that Mr. Fultz was on the list

12

to be seen by the dentist, and her communication to Mr. Cambe included a copy of an email sent to her by the WCF Dentist, Dr. Pearcy, regarding the scheduling for Mr. Fultz's broken tooth. Mr. Cambe also responded to Mr. Fultz's later grievances. For instance, Mr. Cambe responded to Mr. Fultz's June 24th and July 12th grievances by returning them as already addressed. The other Defendants similarly responded to Mr. Fultz's grievances. Mr. Leonard responded to Mr. Fultz's July 4th grievance by returning it for procedural defects. And Mr. Harvil—at the direction of Mr. Cambe—returned Mr. Fultz's July 12th grievance, marking it as previously addressed.

What the parties dispute, then, is "whether the non-medical defendants had any duty to do more than they did, in light of their knowledge of the situation." Hayes, 546 F.3d at 527. Defendants contend that they are entitled to summary judgment because the undisputed evidence demonstrates that the Defendants carried out their job responsibilities exactly as required by notifying dental staff at the outset. Defendants maintain that the Dental Office was aware of Mr. Fultz's increasing pain and other symptoms as time progressed and that they were entitled to rely on the Dental Office's judgment for scheduling Mr. Fultz. [DE 70 at 5].

In response, Mr. Fultz asserts that Defendants are not entitled to summary judgment for several reasons. Mr. Fultz contends that Defendants cannot point to a medical opinion on which they relied because Mr. Fultz had not yet seen a dentist at the time of his complaints. Mr. Fultz also argues that even though Defendants knew "that his medical condition had changed while he waited for treatment" they failed to "inform the medical staff that while he awaited treatment he was experiencing extreme

13

pain." [DE 80 at 9]. Accordingly, Mr. Fultz maintains that there is no evidence that his complaints of severe pain ever "reached a licensed medical professional," and, as such, the dental office did not know to treat his broken tooth as an urgent matter. In sum, Mr. Fultz maintains that Defendants' failure to take additional action caused his delayed treatment such that summary judgment should be denied.

Yet the undisputed evidence does not support Mr. Fultz's assertions. First, the evidence reveals that the WCF dentist, Dr. Pearcy, was aware of Mr. Fultz's broken tooth by May 3, 2018, after the Dental Office received one of Mr. Fultz's first two healthcare requests. At that time, Dr. Pearcy determined that Mr. Fultz should be scheduled in the "six week time frame." [DE 70-1 at 3]. While Mr. Fultz did not report any pain or symptoms in his initial requests, the record shows that Mr. Fultz submitted five more healthcare requests to the Dental Office. In these requests, Mr. Fultz specifically reported his increasing pain and symptoms. For example, Mr. Fultz's healthcare request dated June 18, 2018, stated that his tooth "hurts more each day, it's become extremely painful" and "this is the 4th health care request I've turned in I've only gotten a response from the 1st request." [DE 80-1 at 9]. Likewise, Mr. Fultz's healthcare request dated June 28, 2018, reiterated his pain and headaches. [*Id.* at 15]. Based on this, the Court cannot find that the Dental Office was unaware of Mr. Fultz's pain such that Defendants' actions prevented the Dental Office from treating his tooth as an urgent. Nor can the Court find that Defendants' handling of the Mr. Fultz's later grievances otherwise prevented the Dental Office from "delivering needed care." *Burks,* *555 F3d at 595*.

14

The evidence also demonstrates that Mr. Fultz relayed the content of these additional healthcare requests in his later grievances—giving Defendants notice that he had made the Dental Office aware of his changed circumstances. For instance, in his grievance dated June 24, 2018, reviewed by Mr. Cambe, Mr. Fultz explained that: "I've sent several [healthcare request forms] since [the Dental Office] said I was scheduled making them aware that my dental pains become increasingly worse." [DE 80-1 at 10]. Likewise, in his grievance directed to Mr. Leonard on July 4, 2018, although Mr. Fultz primarily complained of Mr. Cambe's response to a prior grievance, he also made it clear that he had been scheduled to see the dentist. [DE 80-1 at 16]. Finally, Mr. Fultz's grievance received by both Mr. Cambe and Mr. Harvil dated July 23, 2018, provided that: "I've filed at least 7 [healthcare request forms] making [the Dental Office] aware my dental pain has become increasingly worse. They continue to respond saying I'm on the dentist list to be seen. I shouldn't have to wait this long . . . ." [DE 80-1 at 23]. As this grievance also stated that the Dental Office "continue[d] to respond[,]" Defendants had no reason to believe that the Dental Office did not receive his subsequent healthcare requests or that the Dental Office was otherwise ignoring Mr. Fultz. *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019) (finding no deliberate indifference where "non-medical officials relied on the medical professionals to provide proper treatment, and there was nothing to give notice to the officials of a need to intervene").

For these reasons, the Court cannot find that named Defendants were deliberately indifferent. Defendants referred the matter to the Dental Office, confirmed that the Dental Office had scheduled Mr. Fultz for treatment, and had no reason to

believe that the Dental Office was unaware of Mr. Fultz's increasing pain or was ignoring him. Defendants were not deliberately indifferent by allowing the dental office to determine how—and when—to manage Mr. Fultz's care. *See Greeno*, 414 F.3d at 655-56 ("We do not think [the non-medical official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference.").

## IV. Conclusion

Of course, Mr. Fultz's claims raise serious concerns about the handling of dental care requests at WCF. The WCF Dental Office's slow and infrequent responses to Mr. Fultz's are particularly troubling especially since Mr. Fultz reported that he was in extreme pain, suffered from headaches, and could not sleep. The lack of expediency, response, and transparency by the WCF Dental Office leaves much to be desired and are of particular concern to the Court. But, without more, the Court cannot find that the evidence permits a factfinder to find deliberate indifference on the part of the three non-medical Defendants – the WCF Grievance Staff. It is not clear from the record before this Court that further action by the non-medical Defendants would have resulted in earlier treatment or other palliative effect for Mr. Fultz. For these reasons, Defendants' motion for summary judgment must be **GRANTED**. [DE 69].

**SO ORDERED** this 26th day of September 2023.

/s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge